**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

SHANE ROSADO,

               *Plaintiff*,

     -v-

NY2O, LLC, NEW DUTCH WATER CORP.,
ELIAS SLUBSKI and ESTHER SLUBSKI,

             *Defendants*.

Civil Action No.:

**COMPLAINT
INJUNCTIVE RELIEF DEMANDED
DEMAND FOR JURY TRIAL**

Plaintiff, SHANE ROSADO, sues Defendants NY2O, LLC, NEW DUTCH WATER

CORP., ELIAS SLUBSKI and ESTHER SLUBSKI, and states the following in support thereof:

**<u>NATURE OF THE ACTION</u>**

1.      This is an action for correction of inventorship of four design patents for a bottle

design issued to defendant Esther Slubski and assigned to defendant New Dutch Water Corp.

("New Dutch"), US Patent Nos. D576,495, D596,037, D611,819 and D663623 (collectively the

"Bottle Patents").

2.      Shane Rosado brings this action because Rosado, not Esther Slubski, is the true

sole inventor of the Bottle Patents, the designs for which were misappropriated by Elias Slubski

and Esther Slubski for the benefit of New Dutch and NY2O, LLC without the permission or

authority of Shane Rosado.

3.      Rosado seeks a determination from the Court that based upon the evidence of his

conception of the designs in the Bottle Patents Rosado is the inventor of the Bottle Patents.

Rosado also seeks restitution from defendants Elias Slubski, New Dutch and NY2O, LLC who

have been unjustly enriched by their use of and patenting of Rosado's bottle design, an accounting and the placement of a constructive trust on the Bottle Patents, and damages for loss of income from royalties, loss of reputational interests, and other damages in an amount to be proven at trial.

## JURISDICTION AND VENUE

4.      This is an action arising under the Patent Act for Correction of Inventorship pursuant to 35 U.S.C. § 256.

5.      This Court has exclusive subject matter jurisdiction of plaintiff's patent claims pursuant to 28 U.S.C. § 1331 and 1338(a).

6.      This Court has subject matter jurisdiction over the non-federal claims alleged in this action, pursuant to 28 U.S.C. § 1367(a), because such claims are so related to the federal claim alleged in this action that they form part of the same case or controversy.

7.      In the alternative, this Court has subject matter jurisdiction over the non-federal claims alleged in this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Defendants are citizens of New York and subject to personal jurisdiction in New York.

9.      Venue is proper in this district, pursuant 28 U.S.C. § 1391(b)(2), because the wrongful acts of Defendants, as discussed *infra*, occurred, in substantial part, in this judicial district.

10.      In the alternative, venue is proper in this district, pursuant 28 U.S.C. § 1391(b)(3), because Defendants are subject to personal jurisdiction in this judicial district.

## PARTIES

11.     Shane Rosado is an individual who resides in the State of New Jersey.

12.     NY2O, LLC is a New York limited liability company with its principal place of business in Elmsford, New York.

13.     New Dutch Water Corp. is a New York corporation with its principal place of business in Old Bethpage, New York.

14.     Elias Slubski is an individual who resides in Old Bethpage, New York.

15.     Esther Slubski is an individual who resides in Old Bethpage, New York.

## FACTS COMMON TO ALL COUNTS

16.     Shane Rosado is an accomplished industrial and product designer. Rosado studied industrial and product design first at the Art Institute of Ft. Lauderdale, and thereafter at the Pratt Institute School of Design. Rosado's industrial and product design experience includes a myriad of automotive accessories including wheel covers, floor mats, steering wheel covers, seat covers, automotive LED lights, automotive speakers, amplifiers, mini-bikes, mini-choppers, and packaging design for all these products and others.

17.     Elias Slubski ("Elias") is an entrepreneur. Elias incorporated New Dutch on April 21, 2005.  Elias is the Chief Executive Officer of New Dutch and the Manager of NY2O, LLC.

18.     Esther Slubski ("Esther") is an architect and also is Elias's mother.

19.     Rosado and Elias attended junior high school and high school together in Mill Basin, Brooklyn. Rosado and Elias met in sixth grade, became friends, and continued their friendship throughout junior high school and high school.  After high school, the two kept in touch and saw each other often.  Elias was a groomsman in Rosado's wedding in March of 2003.

20.     Elias was aware of Rosado's skills and abilities in industrial and product design. In the summer of 2006, Elias contacted Rosado and requested his assistance with a matter in Rosado's area of expertise.  Elias explained to Rosado that he was preparing to launch a company to sell bottled water and wanted a unique bottle design that would distinguish his product from the other bottled waters in the marketplace.  Elias told Rosado that he had hired Pentgram Design, a well known and highly regarded design firm with offices in Manhattan, to design a bottle.  Elias had agreed to pay Pentagram just under $100,000 for their design work, and had already paid $33,000 to prepare initial concepts.

21.     Elias said he was disappointed in Pentagram's initial concept work on the bottle. Elias asked Rosado to accompany him to a meeting with Petagram because he thought Rosado, with his extensive design experience, could be of assistance. Rosado agreed and attended a meeting with Elias at Petagram's offices.  After the meeting, Elias told Rosado that he was still unhappy with Pentgram's concepts.

22.     Elias asked Rosado if Rosado would design a bottle for Elias instead of Pentagram.  Rosado agreed to help his friend.  Thereafter, Elias fired Pentagram.

23.     Rosado began work on his bottle design in September of 2006.  Rosado worked on a PC computer in SolidWorks®, a three-dimensional computer aided design (CAD) software program commonly used by industrial and product designers.  SolidWorks® is very technical and requires extensive training and a high level of proficiency to use and produce designs that can be employed in product manufacturing.  Rosado is experienced in SolidWorks®, having used it to design many products.

24.     Rosado worked on his bottle design throughout the fall of 2006.  Elias visited Rosado's home in New Jersey on several occasions to view his progress.  Elias told Rosado that

4

he planned to bottle water from the Catskill watershed where New York City's water originates. Elias told Rosado he planned to call his water "NY2O." Elias asked Rosado if he could also design a logo for Elias's NY2O product and Rosado again agreed to help his friend.

25.     At a certain point in the design process, Rosado advised Elias that prototypes of his bottle design could be made.  Rosado contacted a prototyping company in New Jersey and gave the prototyping company his SolidWorks® file containing his bottle design for their use in making the prototypes.  When they were ready, Rosado picked up the sample bottles and showed Elias.  Elias was pleased with the samples and with Rosado's design.

26.     In or about February of 2007 Rosado's bottle design was complete.  Rosado is in possession of his final SolidWorks® file for his bottle design and it reflects that he made his last modifications to the design on February 13, 2007.  That same month, Rosado gave his bottle design in SolidWorks® format and a logo design he created to Elias.  Elias paid Rosado by check approximately $6,000 for his work as an independent contractor.  Rosado has not heard from Elias since.

27.     At no time prior to, during or after Rosado created his bottle design did Elias ever inform Rosado that Elias intended to file patent applications and obtain patents on Rosado's bottle design.

28.     Elias, acting on behalf of New Dutch, concealed from Rosado that Elias intended to file patent applications and obtain patents on Rosado's bottle design.

29.     Elias and New Dutch owed Rosado a duty to disclose to Rosado that they intended to file patent applications and obtain patents on Rosado's bottle designs pursuant to the Patent Act which requires the truthful disclosure of inventorship in connection with every application for a patent.

30.      Elias owed Rosado a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs pursuant to their close personal relationship of over twenty years during which time the two friends frequently reposed trust and confidence in each other.

31.      At no time prior to, during or after Rosado created his bottle design did he ever assign his rights in his bottle design to Elias or New Dutch.

## THE BOTTLE PATENTS

32.      On May 4, 2007, less than three months after Elias's receipt of Rosado's bottle design, Esther filed U.S. design patent application number 29/279,662 entitled "Bottle" (the "'662 Application"). The '662 Application claims the ornamental design for a bottle and contains 6 drawings.

33.      On September 9, 2008, U.S. Patent No. D576,495, which is based upon the '662 Application, was issued to Esther and assigned to New Dutch (the "'495 Patent"). A copy of the '495 Patent is attached hereto as Exhibit 1.

34.      On September 8, 2008, Esther filed U.S. design application number 29/324,244 entitled "Bottle" (the "'244 Application"). The '244 Application claims the ornamental design for a bottle and contains 6 drawings. The '244 Application was filed as a continuation-in-part of the '662 Application and claims priority based upon it.

35.      On July 14, 2009, U.S. Patent No. D596,037, which is based upon the '244 Application, was issued to Esther and assigned to New Dutch (the "'037 Patent"). A copy of the '037 Patent is attached hereto as Exhibit 2.

36.      On September 9, 2008, Esther filed U.S. design application number 29/324,227 entitled "Removable Elastic Band on a Bottle" (the "'227 Application"). The '227 Application

claims the ornamental design for a removable elastic band on a bottle and contains 6 drawings. The '227 Application was filed as a continuation-in-part of the '662 Application and claims priority based upon it.

37.     On March 16, 2010, U.S. Patent No. D611,819, which is based upon the '227 Application, was issued to Esther and assigned to New Dutch (the "'819 Patent").  A copy of the '819 Patent is attached hereto as Exhibit 3.

38.     On December 23, 2010, Esther filed U.S. design application number 29/381,816 entitled "Bottle" (the "'816 Application").  The '816 Application claims the ornamental design for a bottle and contains 6 drawings.

39.     On July 17, 2012, U.S. Patent No. D663,623, which is based upon the '816 Application, was issued to Esther and assigned to New Dutch (the "'623 Patent").  A copy of the '623 Patent is attached hereto as Exhibit 4.

## ROSADO'S INVENTORSHIP

40.     Rosado did not discover the existence of the Bottle Patents until recently.

41.     Rosado is the sole inventor of the Bottle Patents.

42.     The '495 Patent, the '037 Patent, and the '623 Patent are directed to designs for a bottle.

43.     Rosado conceived of his bottle design prior to the filing of the '662 Application, the '244 Application, and the '816 Application.

44.     The '819 Patent is directed to the design of a removable elastic band on a bottle.

45.     Rosado conceived of his design for a removable elastic band on a bottle prior to the filing of the '227 Application.

46.     Rosado reduced his bottle design and his design for a removable elastic band on a bottle to practice prior to the filing of the '662 Application, the '244 Application, the '227 Application, and the '816 Application, by creating his bottle design in SolidWorks® and by producing prototypes of his design.

47.     Exhibits 5, 6, 7, and 8 attached hereto show side-by-side comparisons of Rosado's bottle design and each drawing sheet of the '495 Patent, the '037 Patent, the '819 Patent and the '623 Patent.

48.     As demonstrated in Exhibits 5, 6, 7, and 8 attached hereto, Rosado is the true inventor of the '495 Patent, the '037 Patent, the '819 Patent and the '623 Patent.

49.     Esther is not an inventor of the Bottle Patents.

50.     Esther was named as the inventor of the Bottle Patents through error without any deceptive intent on the part of Rosado.

### THE SUCCESS OF NY2O AT ROSADO'S EXPENSE

51.     In 2009, New Dutch launched the NY2O bottled water product using the Rosado bottle design.

52.     On July 6, 2012, Elias formed NY2O, LLC to market and sell NY2O bottled water.

53.     The NY2O bottled water product has enjoyed great success in the marketplace. The success of NY2O has been due, in significant part, to Rosado's innovative bottle design. On its website at www.ny2o.com and in press releases, the company has touted Rosado's bottle design as a key product attribute. The home page of the NY2O website devotes as much space to laudatory statements praising Rosado's bottle design as it does to descriptions of the water inside

the bottle.  Superimposed over images of Rosado's bottle design, the NY2O website homepage

proclaims in all capitals and large type:

**A VESSEL AS ICONIC AS THE CITY**

FROM THE MOMENT YOU HOLD NY2O IN YOUR HAND,
YOU CAN FEEL THE SPIRIT OF INNOVATION.  THE SHAPE
CALLS TO MIND THE OUTLINE OF NEW YORK'S FAMOUS
SKYLINE.  THE CONTEMPORARY DESIGN
CONSIDERATIONS REFLECT THE ARTISTRY AND VISION
OF ONE OF THE CITY'S ORIGINAL ARCHITECTS, WHO
ALSO HAPPENS TO BE ONE OF OUR FOUNDERS.[1]

54.     On the NY2O website, and on Facebook, Twitter and elsewhere, Elias and his

companies have repeatedly publicized the numerous international design awards that the Rosado

bottle design has received since the NY2O product was launched.  To date, at least two

international awards for excellence in design have been bestowed upon the Rosado bottle design

for NY2O:

- The **2013 Global Bottled Water Award for "Best Package Design or Label"**

  **awarded by Zenith International**, a leading international food and drinks

  consultancy.  According to NY2O, Zenith chose the Rosado bottle design because

  "NY2O's packaging achieves an effective stand-out through excellent and

  original design."

- The **2014 Silver Pentaward for Beverages**, recognizing excellence in creative

  packaging, a juried prize awarding creativity, innovation, impact, branding,

  communication and quality of execution in packaging design.  The Pentaward

  jury is composed of thirteen personalities from the world of packaging design,

---

[1] This appears to be a reference to Esther Slubski claiming, falsely, that she conceived of the Rosado bottle design.

including designers, design agency directors, and packaging design officials from large commercial brands.

The 2013 Global Bottled Water Award and the 2014 Silver Pentaward rightfully belong to Rosado because they laud the Rosado bottle design, favorably distinguish the Rosado bottle design from those designed by other designers, and are a tribute to Rosado's skills as an industrial and product designer.

55.     The NY2O bottle as originally launched in 2009 was identical to the Rosado bottle design.

56.     Since its launch, the NY2O bottle has been modified slightly from Rosado's original bottle design.  However, in the eyes of an ordinary observer, giving such attention as a purchaser usually gives, the current NY2O bottle is substantially the same as the Rosado bottle design. Exhibits 9, 10, 11 and 12 attached hereto show side-by-side comparisons of each drawing sheet of the '495 Patent, the '037 Patent, the '819 Patent and the '623 Patent and the NY2O product bottle.  As demonstrated in Exhibits 9, 10, 11 and 12 attached hereto, the NY2O bottled water product offered and sold by New Dutch is based upon the claims of the '495 Patent, the '037 Patent, the '819 Patent, and the '623 Patent, respectively.

57.     Rosado has engaged the undersigned attorneys and agreed to pay them a reasonable fee.

## COUNT I –CORRECTION OF INVENTORSHIP OF THE '495 PATENT

58.     Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

59.     This is a count against Esther Slubski and New Dutch for correction of inventorship pursuant to 35 U.S.C. § 256.

10

60.     Rosado is the sole inventor of the claims in the '495 Patent.

61.     Through omission and error, Rosado was not listed on the '495 Patent as the inventor.

62.     The omission of Rosado as the inventor on the '495 Patent was without any deceptive intent on the part of Rosado.

63.     Rosado has an expectation of ownership of the '495 Patent based upon his sole inventorship and because he retained ownership of, and did not assign away, his bottle design.

64.     Rosado has a concrete financial interest in the '495 Patent based upon his rightful ownership of the '495 Patent, his financial interest in royalties from the '495 Patent as well as damages in the form of an infringer's profits earned from use of the '495 Patent, and from his reputational interests that accrue from being named the sole inventor of the '495 Patent.

65.     Based on the foregoing, Rosado prays that this Court issue an Order to the Director of the USPTO and Defendants requiring that Rosado be listed as the sole inventor of the '495 Patent.

## COUNT II –CORRECTION OF INVENTORSHIP OF THE '037 PATENT

66.     Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

67.     This is a count against Esther Slubski and New Dutch for correction of inventorship pursuant to 35 U.S.C. § 256.

68.     Rosado is the sole inventor of the claims in the '037 Patent.

69.     Through omission and error, Rosado was not listed on the '037 Patent as the inventor.

70.     The omission of Rosado as the inventor on the '037 Patent was without any deceptive intent on the part of Rosado.

71.     Rosado has an expectation of ownership of the '037 Patent based upon his sole inventorship and because he retained ownership of, and did not assign away, his bottle design.

72.     Rosado has a concrete financial interest in the '037 Patent based upon his rightful ownership of the '037 Patent, his financial interest in royalties from the '037 Patent as well as damages in the form of an infringer's profits earned from use of the '037 Patent, and from his reputational interests that accrue from being named the sole inventor of the '037 Patent.

73.     Based on the foregoing, Rosado prays that this Court issue an Order to the Director of the USPTO and Defendants requiring that Rosado be listed as the sole inventor of the '037 Patent.

## COUNT III –CORRECTION OF INVENTORSHIP OF THE '819 PATENT

74.     Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

75.     This is a count against Esther Slubski and New Dutch for correction of inventorship pursuant to 35 U.S.C. § 256.

76.     Rosado is the sole inventor of the claims in the '819 Patent.

77.     Through omission and error, Rosado was not listed on the '819 Patent as the inventor.

78.     The omission of Rosado as the inventor on the '819 Patent was without any deceptive intent on the part of Rosado.

79.     Rosado has an expectation of ownership of the '819 Patent based upon his sole inventorship and because he retained ownership of, and did not assign away, his design for a removable elastic band on a bottle.

80.     Rosado has a concrete financial interest in the '819 Patent based upon his rightful ownership of the '819 Patent, his financial interest in royalties from the '819 Patent as well as damages in the form of an infringer's profits earned from use of the '819 Patent, and from his reputational interests that accrue from being named the sole inventor of the '819 Patent.

81.     Based on the foregoing, Rosado prays that this Court issue an Order to the Director of the USPTO and Defendants requiring that Rosado be listed as the sole inventor of the '819 Patent.

## <u>COUNT IV –CORRECTION OF INVENTORSHIP OF THE '623 PATENT</u>

82.     Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

83.     This is a count against Esther Slubski and New Dutch for correction of inventorship pursuant to 35 U.S.C. § 256.

84.     Rosado is the sole inventor of the claims in the '623 Patent.

85.     Through omission and error, Rosado was not listed on the '623 Patent as the inventor.

86.     The omission of Rosado as the inventor on the '623 Patent was without any deceptive intent on the part of Rosado.

87.     Rosado has an expectation of ownership of the '623 Patent based upon his sole inventorship and because he retained ownership of, and did not assign away, his bottle design.

88.     Rosado has a concrete financial interest in the '623 Patent based upon his rightful ownership of the '623 Patent, his financial interest in royalties from the '623 Patent as well as damages in the form of an infringer's profits earned from use of the '623 Patent, and from his reputational interests that accrue from being named the sole inventor of the '623 Patent.

89.     Based on the foregoing, Rosado prays that this Court issue an Order to the Director of the USPTO and Defendants requiring that Rosado be listed as the sole inventor of the '623 Patent.

## COUNT V –UNJUST ENRICHMENT

90.     Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

91.     This is a count for common law unjust enrichment against New Dutch, NY2O, LLC and Elias Slubski.

92.     Rosado expended substantial time, labor, and skill to develop his bottle design.

93.     Elias never disclosed to Rosado his intention to apply for patents on Rosado's bottle design.

94.     Elias paid Rosado a *de minimus* sum of money for his bottle design.

95.     Elias, New Dutch and NY2O, LLC were enriched by their use of and patenting of Rosado's bottle design.

96.     Elias, New Dutch and NY2O, LLC obtained immediate, direct, and substantial commercial advantages from Rosado's bottle design and the patents on Rosado's bottle design. These advantages include, but are not limited to, (i) not having to invest extensive significant money, time, labor, or skill to develop Rosado's bottle design, and (ii) preventing New Dutch's and NY2O, LLC's direct competitors from copying and exploiting Rosado's bottle design.

97.     Defendants' aforementioned unjust enrichment was at the expense of Rosado.

98.     Specifically, as result of Elias,' New Dutch's and NY2O, LLC's use of and patenting of Rosado's bottle design, Rosado has been damaged, and continues to suffer damages including, but not limited to, loss of income from royalties that he could have earned from the licensing of his bottle design, as well as the reputational interests that would have accrued from being named the sole inventor of the Bottle Patents.

99.     Accordingly, by misappropriating Rosado's bottle design, Defendants have been unjustly enriched.

100.    Based on the forgoing, equity and good conscience dictate that Defendants make restitution to Rosado in an amount to be determined at trial.

## COUNT VI –FRAUDULENT CONCEALMENT

101.    Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

102.    This is a count for fraudulent concealment under New York common law against New Dutch and Elias Slubski.

103.    Elias and Rosado had a close personal relationship that lasted over twenty years during which time the two friends frequently reposed trust and confidence in each other.

104.    Elias asked Rosado to utilize his skills and experience to create a bottle design for Elias.

105.    Elias, acting on behalf of himself and New Dutch, concealed from Rosado that Elias intended to file patent applications and obtain patents on Rosado's bottle design.

106.     Elias, acting on behalf of himself and New Dutch, possessed superior knowledge, not readily available to Rosado, that New Dutch intended to file patent applications and obtain patents on Rosado's bottle design.

107.     Elias, acting on behalf of himself and New Dutch, knew that Rosado had no knowledge that New Dutch intended to file patent applications and obtain patents on Rosado's bottle design, and knew that Rosado was acting without such knowledge.

108.     Elias had a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs.

109.     Elias had a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs pursuant to the Patent Act which requires the truthful disclosure of inventorship in connection with every application for a patent.

110.     Elias had a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs pursuant to their close personal relationship.

111.     The fact that Elias intended to file patent applications and obtain patents on Rosado's bottle designs was material to Rosado.

112.     Rosado, in reliance upon Elias, created his bottle design, reduced it to practice, and provided it to Elias for a *de minimus* payment.

113.     At no time prior to, during or after Rosado created his bottle design did Elias ever inform Rosado that Elias intended to file patent applications and obtain patents on Rosado's bottle design.

114.     Elias caused New Dutch to file the '662 Application, the '244 Application, the '227 Application and the '816 Application with the USPTO without disclosing the fact that New

Dutch was filing these applications to Rosado, and without disclosing Rosado's inventorship to the USPTO.

115.  The Bottle Patents were issued to Esther and assigned to New Dutch as a result of the filing of the applications for Rosado's bottle design with the USPTO.

116.  Elias and New Dutch obtained immediate, direct, and substantial commercial advantages from Rosado's bottle design and the patents on Rosado's bottle design, including, but are not limited to, (i) not having to invest extensive significant money, time, labor, or skill to develop Rosado's bottle design, and (ii) preventing New Dutch's and NY2O, LLC's direct competitors from copying and exploiting Rosado's bottle design.

117.  Rosado was damaged, and continues to suffer damages including, but not limited to, loss of income from royalties that he could have earned from the licensing of his bottle design, as well as the reputational interests that would have accrued from being named the sole inventor of the Bottle Patents.

118.  Rosado was also damaged to his property because patents are a property right, and by and through the acts set forth herein, Rosado was denied his right to his patents.

### COUNT VII –NEGLIGENT MISREPRESENTATION OR OMISSION

119.  Rosado repeats and re-alleges the allegations of paragraphs 1 through 57 as though fully set forth herein.

120.  This is a count for negligent misrepresentation or omission under New York common law against New Dutch and Elias Slubski.

121.  Elias and Rosado had a close personal relationship that lasted over twenty years during which time the two friends frequently reposed trust and confidence in each other.

122.     Elias asked Rosado to utilize his skills and experience to create a bottle design for Elias.

123.     Elias, acting on behalf of himself and New Dutch, negligently concealed from Rosado that Elias intended to file patent applications and obtain patents on Rosado's bottle design.

124.     Elias, acting on behalf of himself and New Dutch, possessed superior knowledge, not readily available to Rosado, that New Dutch intended to file patent applications and obtain patents on Rosado's bottle design.

125.     Elias, acting on behalf of himself and New Dutch, knew or had reason to know that Rosado had no knowledge that New Dutch intended to file patent applications and obtain patents on Rosado's bottle design, and knew or had reason to know that Rosado was acting without such knowledge.

126.     Elias had a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs.

127.     Elias had a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs pursuant to the Patent Act which requires the truthful disclosure of inventorship in connection with every application for a patent.

128.     Elias had a duty to disclose to Rosado that he intended to file patent applications and obtain patents on Rosado's bottle designs pursuant to their close personal relationship.

129.     The fact that Elias intended to file patent applications and obtain patents on Rosado's bottle designs was material to Rosado.

130.     Rosado, in reliance upon Elias, created his bottle design, reduced it to practice, and provided it to Elias for a *de minimus* payment.

18

131. At no time prior to, during or after Rosado created his bottle design did Elias ever inform Rosado that Elias intended to file patent applications and obtain patents on Rosado's bottle design.

132. Elias caused New Dutch to file the '662 Application, the '244 Application, the '227 Application and the '816 Application with the USPTO without disclosing the fact that New Dutch was filing these applications to Rosado, and without disclosing Rosado's inventorship to the USPTO.

133. The Bottle Patents were issued to Esther and assigned to New Dutch as a result of the filing of the applications for Rosado's bottle design with the USPTO.

134. Elias and New Dutch obtained immediate, direct, and substantial commercial advantages from Rosado's bottle design and the patents on Rosado's bottle design, including, but are not limited to, (i) not having to invest extensive significant money, time, labor, or skill to develop Rosado's bottle design, and (ii) preventing New Dutch's and NY2O, LLC's direct competitors from copying and exploiting Rosado's bottle design.

135. Rosado was damaged, and continues to suffer damages including, but not limited to, loss of income from royalties that he could have earned from the licensing of his bottle design, as well as the reputational interests that would have accrued from being named the sole inventor of the Bottle Patents.

136. Rosado was also damaged to his property because patents are a property right, and by and through the acts set forth herein, Rosado was denied his right to his patents.

## **PRAYER FOR RELIEF**

WHEREFORE, Rosado demands judgment and relief against NY2O, LLC, New Dutch Water Corp., Elias Slubski and Esther Slubski as follows:

19

A.  An Order to the Director of the USPTO and Defendants requiring that Rosado be listed as the sole inventor of the Bottle Patents;

B.  Constructive trusts placed upon the Bottle Patents awarding Rosado all of the benefits realized by New Dutch Water Corp., NY2O, LLC and Elias Slubski from the Bottle Patents, and requiring that any and all references to the creator of the Bottle Design made by defendants be corrected to reflect that Rosado is the creator of the bottle design.

C.  An order requiring New Dutch Water Corp. to assign all right, title, and interest in and to the Bottle Patents to Rosado.

D.  An accounting of all benefits realized by New Dutch Water Corp., NY2O, LLC and Elias Slubski from the Bottle Patents;

E.  Restitution be made to Rosado by New Dutch Water Corp., NY2O, LLC and Elias Slubski for all benefits received by them from the Rosado bottle design;

F.  Damages be awarded to Rosado for, *inter alia*, loss of income from royalties, loss of reputational interests, and other damages to be proven at trial, along with pre and post-judgment interest; and

G.  Such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 12, 2014

Respectfully submitted,

By: _____
Joel B. Rothman (JR 0352)
joel.rothman@sriplaw.com

Schneider Rothman Intellectual Property Law
Group PLLC
4651 North Federal Highway
Boca Raton, FL 33431
Tel:  561-404-4350
Fax: 561-404-4353
Attorneys for Plaintiff